Howry, J.,
delivered the opinion of the court:
The gravamen of this complaint is negligence. It is well proven.
The findings establish that the Secretary of the Navy on March 14, 1903, authorized petitioner to land a submarine *470 telegraphic cable on our naval reservation after laying the cable under the waters in the harbor of San Luis d’Apra, island of Guam. That during heavy weather in 1907 one of the black buoys at the entrance to the harbor broke from its moorings and drifted into the inner harbor. The purpose in placing buoys at the entrance was to guide vessels entering or leaving the harbor, and it was the duty of the naval authorities at the station to keep them in place. This drifting buoy was made ready by the Navy people to put back in place. The executive officer in charge, by dropping anchor for the permanent buoy, supposed that there would be no danger of fouling the cable. A boatswain undertook to drop the repaired buoy well to the northward of the marking buoy; but a small difference in the angles would have materially changed the plotted position of the marking buoy. By the use of grapnels in placing the marking buoy the exact position of the cable could hare been located with very little trouble and at small expense, and by this method the buoy as repaired could have been replaced with practically no danger to the cable. Service was interrupted on petitioner’s section of cable practically simultaneously with the dropping of the new or repaired buojc When the cable was recovered and raised it was found that the sheathing wires were crushed and flattened and presented the appearance of having been crushed between two solid objects. Petitioner undertook to repair the cable upon the failure of the station superintendent to recover the same, and did so at a cost of $35,894.47, which included $1,812.50 for some new cable. But petitioner was obliged to summon from the Hawaiian Islands one of its vessels to do the work of raising the cable and making the necessary repairs. The repair ship left Honolulu September 28, 1907, arriving at Guam 14 days thereafter. There was some delay in repairing the cable because of the approach of a typhoon. Between October 22 and November 10, 1907, the repair ship was engaged in tak- . ing on coal, which was furnished by our naval authorities and paid for by petitioner. The ship left Guam November 10,1907, and arrived at Honolulu two weeks thereafter.
The license granted by this Government contained the re *471 striction tliat the United States should in no manner whatsoever suffer any loss or be placed to any expense on account of the license; but it was not contemplated that the restriction contained in the license should give to the Government or its agents the right to destroy the cable when the petitioner availed itself of the privilege to lay the same on the Government’s reservation, or in the waters leading to the reservation, under the terms of the license.
The court is of opinion that the fouling of petitioner’s cable presents a clear case for relief by Congress. Negligence consists in conduct which common experience or the special knowledge of the actor shows to be so likely to produce the result complained of, under the circumstances known to the actor, that he is held answerable for that result, although it was not certain, intended, or foreseen. Schlemmer v. Buffalo, Rochester, Ry., 205 U. S., 12. Tested by this rule, and which we think is applicable to the facts found, judgment might be rendered against the Government if the court had jurisdiction to enter judgment of any kind. It is right and proper for the legislative bodies to indemnify petitioner for the amount of moneys expended in recovering the cable, in its repair, and in supplying the necessary new cable.
But one question is left to consider. Upon the failure of the station superintendent to recover the cable and repair the fault petitioner had to summon its cable-repair ship, then stationed at Honolulu, Hawaiian Islands, its regular headquarters, to proceed to Guam and make the necessary repairs. The vessel left its regular station, and on arriving at Guam immediately commenced the work of repairing. The harbor was dragged, and when the cable was recovered and raised it was found to have been crushed. It took 14 days for the repair ship to travel from Honolulu to Guam. Two days were lost in cutting the wrong cable and two days likewise delayed the ship in waiting for a typhoon. Seven days were actually taken for the repair of the cable. Nineteen days were taken in loading coal, in order to return to the repair station. The total number of days required to make the repairs aggregate 56, as follows: 14 days in going from *472 Honolulu to Guam, 2 days on account of an approaching typhoon, 7 days occupied in actual repairing of cable, Í9 days in waiting for and loading coal for return trip, 14 days returning from Guam to Honolulu, at á cost of $35,894.4?. Though it has been suggested that there should not be an estimate made for the time taken for the repair ship to return to its regular station, the court is unable to see why petitioner should not be put in exactly the same position as if the agents of the United State had not caused the round-trip journey.